Lane *v.* Sprague.

JOSEPH LANE, JR., *v.* EDWARD SPRAGUE.

## Contract. Sale.

The defendant contracted with the plaintiff for certain articles, and before complete delivery thereof, sold his interest in the contract. The plaintiff had failed to deliver within the time stipulated, but agreed with the purchaser of the defendant's interest in the contract for an extension without any authority from the defendant. The contract was not repudiated or abandoned by any of the parties, but was treated by the defendant as still subsisting between himself and the plaintiff, with the modification as to time of delivery. *Held*, that the defendant thereby waived all rights resulting from the non-performance of the contract as originally made, and accepted and ratified it as modified.

BOOK ACCOUNT. The case was referred to an auditor, who reported the facts as they appear substantially in the course of the opinion of the court. Upon the facts stated in the report, the court, at the September Term, 1862, PECK, J., presiding, rendered judgment for the plaintiff to recover the balance due for the seven thousand poles,—to which the defendant excepted.

*Wm. Hebard* and *Colby*, for the defendant.

The plaintiff had released the defendant from the contract by failing to fulfill on his part. Mack was assignee and assumed control, and made a new contract without the defendant's authority, and this operated as a substitution of parties.

*Wing, Lund & Taylor*, for the plaintiff.

The sale to Mack made him the defendant's agent in the matter of the contract, and the principal afterwards ratified and adopted his acts in extending the time. The plaintiff was never released from the contract before he had fully performed his agreement, and was liable to the defendant. This liability was mutual, and the defendant so understood it, and his tender is an admission of the legality of the plaintiff's claim. *Woodward* v. *Cutter*, 33 Vt. 49.

PIERPOINT, J. The auditor's report shows, that these parties entered into a contract, by which the plaintiff agreed to cut and deliver at a designated place 7,000 hop poles, during the winter and spring of 1853-4 for which the defendant agreed to pay him

$1.50 *per* hundred. The defendant was expected to draw away the poles during the winter of 1854–5. In October, 1854, the defendant sold his farm, together with his said contract with the plaintiff, to one Mack who became the equitable owner of the contract, of which he duly notified the plaintiff. The plaintiff had failed to perform the contract on his part according to its terms, having delivered only about 4,000 poles within the time stipulated. But after Mack had bought the contract, he and the plaintiff entered into an arrangement by which the time within which the poles were to be delivered was extended. The legal effect of such failure on the part of the plaintiff and the agreement with Mack to extend the time of delivery, was to entirely absolve and discharge the defendant from all obligations to receive or pay for the poles, if he saw fit so to regard it, leaving the plaintiff to look to Mack under such new arrangement, and this is the position, which the auditor seems to have regarded the parties as occupying. But it was certainly competent for the defendant to waive any advantage which the plaintiff's failure to deliver the poles as agreed, had given him, and to ratify any agreement made between the plaintiff and Mack as to an extension of the time of delivery, and to treat the contract as modified by such agreement as a subsisting one between himself and the plaintiff, all parties assenting thereto and acquiescing therein. The auditor has found that "after Mack had informed the plaintiff that he had purchased the defendant's farm and the contract for poles, that the plaintiff treated and regarded Mack as the responsible party, and as the one who had the right to control and negotiate in relation to the contract, and that he relied on him for payment." All this necessarily follows from the fact that Mack had purchased the contract of the defendant. Mack then had the right to control it, and the plaintiff would have no right to negotiate with the defendant in regard to it, and the plaintiff would of course expect that Mack would pay him for the poles, as he was bound to do, as between Mack and the defendant; but this did not change the legal relations existing between the plaintiff and defendant, so far as any right of action growing out of the performance or non-performance of the contract is con-

Lane *v.* Sprague.

cerned, and any legal proceedings to enforce any such right, must have been, between the plaintiff and defendant.

The auditor has not found that the contract between the plaintiff and defendant was ever repudiated or abandoned by any of the parties, but on the other hand the facts which he has reported show quite conclusively that they all regarded it as a subsisting and binding contract between the plaintiff and defendant after the agreement to extend the time of delivery was entered into. There were negotiations between the plaintiff and Mack having in view other alterations, but it does not appear that they resulted in any change in the contract except as to the time of delivery.

The letter written by the defendant to the plaintiff on the 10th of January, shows what change had been made as to the time of delivery and that the defendant understood it, and assented to it. The letter was written at the request of Mack and he knew its contents. The defendant therein states the time within which the contract was to be performed according to the extended time and speaks of it all through as a then subsisting contract between himself and the plaintiff, and tells the plaintiff what will be the consequences of a failure of the plaintiff to perform it, saying that if he does not perform Mack will claim the damage through him, the defendant, which could be done only upon the ground that the contract was still a subsisting one between the plaintiff and defendant. The report shows that the plaintiff proceeded to perform the contract, and deliver the poles within the extended time. Mack took away 4000 of the poles and paid $40.00 towards the contract price.

We think under these circumstances the defendant must be regarded as having waived all rights resulting from the non-performance of the contract as originally made, and as accepting and ratifying the agreement extending the time of delivery and that the county court so considered it in rendering judgment against the defendant.

Judgment of the county court is affirmed.